IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAY - 5 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CHANDA ALSTON, et al,  )
)
Plaintiffs,  )
)
v.  )
)
DISTRICT OF COLUMBIA, et al.  )
)
)
Defendants.  )

CASE NUMBER 1:06CV00836

JUDGE: Ricardo M. Urbina

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 05/05/2006

## PLAINTIFFS' MOTION FOR EMERGENCY STAY PUT RELIEF

Plaintiffs move this Court for emergency Stay Put relief, pursuant to the Stay-Put provision of the Individuals with Disabilities Education Act, as amended, 20 U.S.C. § 1415 (j), and Rule 65(b) of the Federal Rules of Civil Procedure. Plaintiffs seek a Stay Put order requiring DCPS to take the following steps to maintain her current IEP program and placement: (1) to refer Plaintiff C.A. for placement at a residential facility; (2) to place C.A. at one such facility; and, (3) to provide such assistance as may be required for C.A. to be interviewed at such a facility.

The grounds for Plaintiffs' Motion are set forth in the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

*Karen D. Alvarez* [signature]
Karen D. Alvarez

D.C. Bar No. 423186  
1442 Foxhall Road, N.W.  
Washington, D.C. 20007  
(202) 333-8553  
202-333-1546 (Fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHANDA ALSTON, et al, )
)
)
)
)
Plaintiffs, ) Civil Action No. _____
)
)
v. )
)
DISTRICT OF COLUMBIA, et al. )
)
)
Defendants. )

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY STAY PUT RELIEF

Plaintiffs have moved this Court for emergency injunctive relief, ordering Defendants to maintain C.A. in a residential placement, as required by her IEP, pending resolution of the Due Process Complaint filed by Mrs. Alston. The Individuals with Disabilities Education Act, as amended, ("IDEA"), entitles Plaintiffs to Stay Put relief, where DCPS has made a fundamental change in C.A.'s IEP program and placement and the parent has asserted her right to Stay Put relief. 20 U.S.C.§ 1415(j). In the absence of emergency Stay Put injunctive relief, Plaintiffs' statutory Due Process right to maintenance of C.A.'s Stay-Put placement will be a nullity. Since DCPS' action or inaction, C.A.'s psychological condition has deteriorated severely. See Ex. D at 1-4 (Cabin John MS IEP Team Meeting Notes)(describing hallucinations C.A. suffers in the classroom). C.A. is entitled to Stay Put relief and without such relief she will not be available for learning in the classroom.

3

**INTRODUCTION**

This is the second occasion within the past year in which Defendants have effectuated a change of placement of C.A., without complying with the requirements of the IDEA, as well as the second occasion on which Plaintiffs have been forced to seek Stay Put relief from this Court. See Betty Laster, et al v. D.C., et al, 5-CV-1875 (RMU), Motion for Temporary Restraining Order (D.D.C. filed, Sept. 22, 2005). As the Laster Court held, C.A.'s 2003-2004, 2004-2005, and 2005-2006 IEPs require residential placement at he Grafton School in Rockville, MD, combined with a day-instructional program for special education students at the Cabin John Middle School. Memorandum Opinion at 3, (Docket Doc. No. 2, Sept. 28, 2005). The Laster Court issued injunctive relief, requiring DCPS to maintain C.A. at her combined Cabin John/Grafton School placement. Order Granting Plaintiffs' Motion for Stay Put Injunction at 1 (Docket Doc. No. 2, Sept. 26, 2005).

As of August 2005 C.A. was enrolled and residing at the Grafton School. Id. DCPS failed that month to pay the tuition for C.A.'s Cabin John MS day program. Id. As a result, C.A. was unable to register at Cabin John MS at the beginning of the 2005-2006 school year, and was not registered at Cabin John until this Court ordered DCPS to submit all payments and authorizations required by the Montgomery County Public School System. See Order Granting the Plaintiffs' Motion for a Stay Put Injunction at 1 (Docket Doc. No .2, Sept. 26, 2005).

In January 2006 Grafton School announced that it would close its Rockville campus. Since the Rockville campus closed on February 18, 2006, DCPS has failed to provide a substitute residential placement for C.A. DCPS'

4

failure to provide the residential placement called for by her IEP constitutes a unilateral and fundamental change of placement, in violation of IDEA.

Plaintiffs seek Stay Put relief requiring DCPS to place C.A. forthwith in a substitute residential placement, until such time as Plaintiffs' Due Process Complaint has been heard, and any appeal thereof is completed.

# I.
# FACTS

### A. C.A.'s 2005-2006 IEP and Placement

On June 20, 2005, DCPS and Mrs. Alston approved the most recent of C.A's Grafton/Cabin John IEPs, to be implemented during the 2005-2006 school year. See Exhibit A. See also, Order Granting Plaintiffs' Motion for Stay Put Injunction at 1, supra ( Sept. 26, 2005) (School Year 2005-2006 IEP). As of January 2006, C.A. was residing at Grafton School's Rockville campus and attending a day program at Cabin John MS, as required by her IEP. Ex. B. at Para. 3; see also Ex. D at 1-4.

### B. February 2006 Fundamental Change of Placement and Program

In January 2006, Grafton School announced that it would close its Rockville Campus. Ex. B at Para. 7. Grafton School staff advised Mrs. Alston that DCPS would be transferring DCPS students from Grafton's Rockville Campus to the Forbush School. Id. at Para. 8; see also Ex. C at 3. On February 18, 2006, Grafton School closed its Rockville Campus. Ex. B at Para.7, 13 . DCPS did not transfer C.A. to Forbush School. Ex. B at Para.13-14. DCPS did not propose or make any alternative residential placement. Id.

5

Indeed, DCPS failed to make any provision, once Grafton closed, for transporting C.A. from her home to Cabin John MS. Id. at Para. 13; see also Ex. E at 3.

DCPS' failure to provide a substitute residential placement effected a fundamental change in C.A.'s program and placement, eliminating entirely from her educational program the residential placement that her IEP requires DCPS to provide. Plaintiffs, therefore, are entitled to Stay Put relief. Lunceford v. D.C. Board of Education, 745 F. 2d 1577, 1582 (D.C.Cir. 1984); Memorandum Opinion at 5, Laster et al v. D.C., et al, 5-CV-1875 (D.D.C.Sept. 28, 2005).

Because C.A. has been without a residential placement her psychological condition has deteriorated severely. Ex. D at 1-5 (Cabin John MS IEP Team Meeting Notes) (describing behavioral problems, on-going hallucinations, psychiatric hospitalization); Ex. B at Para. 16-23, 26.

### C. Notice to DCPS and Assertion of Stay Put Rights

Mrs. Alston asserted C.A.'s right to a residential placement in telephone conferences, correspondence and other communications with DCPS staff on January 30, 2006, February 1, 2006, February 2, 2006, February 14, 2006, March 9, 2006, and April 5, 2006. See Ex. C at 3, 7; Ex. B at Para. 9-12; see also Ex. D. at 3-4 (Cabin John MS IEP Team Meeting Notes)( C.A. requires residential placement). Mrs. Alston filed a Due Process Complaint before the DCPS Student Hearing Office on May 5, 2006. Ex. F. In her Due Process Complaint Mrs. Alston asserted C.A.'s right to Stay Put at her Cabin John day – program and at a residential placement. Ex. F at 4.

## II
## LAW

## A. Stay Put Preserves Last Valid IEP and Placement

The Stay Put provision, 20 USC Section 1415(j) is an automatic or statutory injunction. Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982), citing Honig v. Doe, 484 U.S. 305 (1988); see also Memorandum Opinion at 5-6, Laster et al v. D.C. et al, 5-CV-1875 (D.D.C. Sept. 28, 2005), citing Casey K. v. St. Anne Co. High Sch. Dist, 400 F.3d 508, 511 (7th Cir. 2005); Murphy v. Arlington Century Sch. Dist, 297 F.3d 195, 199 (2d Cir. 2000). The Stay Put provision prevents school authorities from effecting unilateral changes to a child's school placement and educational program. Honig v. Doe, 484 U.S. 305 (1988). The Stay Put Provision protects Plaintiffs <u>by maintaining in force the child's last valid Individualized Educational Program ("IEP")[1] and placement</u>, while the parent exercises her IDEA right to challenge decisions and actions of the school district. Burlington v. Dep't of Education, 471 U.S. 359, 361(1985). Courts sometimes formulate the Burlington test as maintaining the last IEP and Placement that was agreed upon by both the parent and the school district.[2]

---

[1] The Supreme Court has described the IEP as the cornerstone of IDEA. Burlington v. Board of Education, 471 U.S. 359, 367-368 (1985). IDEA defines an IEP as a written statement of the child's educational needs that is developed in accordance with 20 U.S.C.§ 1414(d). 20 U.S.C.§ 1401. It must be based on the results of comprehensive educational assessments that determine the areas of the child's educational needs and must be developed by a Team that includes the child's parent and educators familiar with the student. 20 U.S.C. § 1414(d)(1)(B). The development of the IEP is surrounded by procedural safeguards, intended to protect and enhance parental participation in the development of the IEP. 471 U.S. at 367-368; See, e.g. 20 U.S.C. § 1415; 34 C.F.R.§§ 300.344-300.345, 300.500 – 300.505. Once an IEP has been developed in accordance with Section 1414, IDEA requires that a group that includes the child's parent decide upon the child's placement. 34 C.F.R. §300.552(a)(1). Placement must be based on the child's IEP. 34 CFR.§ 300.552(b)(2)

[2] See also, Drinker v. Colonial School Dist, 78 F.3d 859,867 (3d Cir.1996); Zvi D. v. Ambach, 694 F.2d. 904,908 (2d Cir. 1982)(then current placement is last agreed-upon placement between agency and parent); Spillsbury v. D.C. 307 F.Supp 2d 22 (DDC 2004)( Stay Put implements last valid placement and requires provision of all services decided upon in last valid IEP); Cosgrove v. Board of Education, 175 F. Supp. 375,384 ( N.D.N.Y. 2001) (then current placement is placement to which agency and parents consented before the parents requested a due process hearing); Beth B. v. van Clay, 126 F.Supp. 2d 532, 533-34 (E.D. Ill. 2000) (then current placement enforces last agreed upon IEP).

7

**B. Equivalent Substitute Placement Required Where Current Placement Not Available**

When a child's then-current educational placement is not available The school system must provide the student with placement in a similar program during the pendency of administrative and judicial proceedings. Memorandum Opinion at 6-8, Laster et al v. D.C. et al, 5-CV-1875 (D.D.C. Sept. 28, 2005), citing, Knight v. D.C., 877 F.2d 1025,1029 (D.C. Cir. 1989); McKenzie v. Smith, 771 F.2d 1527,1533 (D.C. Cir. 1985); Block v. D.C., 748 F.Supp. 891, 898 n.9 (D.D.C. 1990).

**C. Stay Put Accrues upon DCPS' Decision to Change Evaluation, Program or Placement**

Stay Put protection applies from the time that the school district decides to change the child's evaluation, program or placement until the parent decides not to contest that decision, or, if the parent does decide to litigate, until the administrative hearing is completed and any appeal is decided. 20 U.S.C. §1415()); Stemple v. Bd of Ed, 623 F2d 893(4th Cir. 1980), cert. den'd 450 U.S. 911(1981)(Stay Put protections apply as soon as school authorities decide to change identification, evaluation or placement of child); Termine v. Hart, 219 F.Supp.2d 1049 (C.D.Cal. 2002) (Stay-put provision applies to all proceedings under Section 1415), citing K.T. v. West Orange, 2001 U.S.Dist. Lexis 22265 (D. N.J. Oct.23,2001).

**D. Stay Put Protection Can Not Be Waived**

The parent can not lose her Stay-put protection except by affirmative agreement. Drinker v. Colonial School Dist., 78 F.3d. 859, 868 (3d Cir. 1995)(court unable to find any case suggesting that parent can waive stay-put right except by affirmative agreement to give it up).

**E. Stay Put Relief Is Granted Without Reference to Traditional Injunctive Relief Standard**

The Stay Put provision of IDEA is an automatic or mandatory injunction. Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982), citing Honig v. Doe, 484 U.S.305 (1988). It is granted without application of the traditional injunctive standard requiring a demonstration of irreparable harm. Andersen v. D.C., 877 F2d 1018, 1023(DC Cir. 1989); Community High School v. Board of Education, 103 F.3d 545 (7th Cir. 1996)(rejecting defendants demand for evidentiary hearing and balancing of equities). The Stay put provision substitutes an absolute rule for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fairground for litigation and a balance of hardships. Zvi, supra, 694 F.2d at 906.

It does not require the formal protective hurdles imposed by Rule 65 of the Federal Rules of Civil Procedure. T.H. v. Board of Education, 1998 U.S. Dist. Lexis 19110 at *20-23 (N.D. Ill Dec.2,1998), citing Honig v. Doe, supra, 484 U.S. at 326-327. Once the court ascertains the student's stay-put placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief[3]. Drinker v. Colonial School Dist., 78 F.3d. 859, 864 (3d Cir. 1995)

---

[3] It is apparent that C.A. would, in any event, meet the traditional requirements for injunctive

### F. No Exhaustion Requirement Prior to Seeking Stay-Put Injunction

Parents are not required to exhaust IDEA's administrative remedies, when it would be futile or inadequate. Honig v. Doe, 484 U.S. 305, 326-27 ( 1988) (approving issuance of injunctive relief to parents who had not exhausted administrative remedies before applying for order requiring school district to re-admit child to special education placement) citing Smith v. Robinson, 468 U.S. 992, 1014, n. 17 (1984), 121 Cong. Rec. 37416 (1975) (remarks of Sen. Williams) ("[E]xhaustion . . . should not be required . . . in cases where such exhaustion would be futile either as a legal or practical matter"); Cox v. Jenkins, 878 F.2d 414( D.C. Cir. 1989); see Murphy v. Arlington Central School Dist., 297 F.3d 195,199 (2d Cir. 2002)(declining to require exhaustion in stay put action).

### III
### CONCLUSION

Plaintiffs believe that the legal standards utilized by this Court and others make it plain that C.A. is entitled to Stay Put relief. Because Grafton's

---

relief. This Court and others routinely hold that a child who has been deprived of substantive special educational rights suffers daily irreparable harm, See, e.g., Cox v. Brown , 498 F.Supp. 823, 829 ( D.D.C. 1980 ) ( Children suffer irreparable injury each day that they lack appropriate education). In this Circuit, the traditional standard for immediate injunctive relief requires that a plaintiff establish: (1) a substantial likelihood that she will succeed on the merits of her case; (2) that irreparable harm will occur to plaintiff absent such an injunction; (3) that an injunction would not substantially harm the rights of the defendants; and (4) that an injunction would be in the public interest, or at least not be adverse to the public interest. Sea Containers Ltd. V. Stena AB, 890 F.2d 1205 (D.C. Cir. 1989); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc. , 559 F.2d 841, 842-44 (D.C. Cir. 1977). The four factors of the Holiday Tours test must be viewed as a continuum: more of one factor compensates for less of another. An injunction may be justified where there is a particularly strong showing of likelihood of success on the merits, even if there is a relatively slight showing of irreparable injury, provided that plaintiff demonstrate at least some injury. CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738,747 (D.C. Cir. 1995 ). An injunction may be issued with either a high probability of success and some injury or vice versa. Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C.Cir. 1985). Here, C.A.'s Cabin John IEP Team has found that C.A's deteriorating emotional condition leaves her unable to learn in the classroom, and has found that she is suffering profound emotional distress, as a result of the hallucinations and fears that she endures. See Ex. D at 1-4.

Rockville residential campus no longer is available to C.A., those legal standards require that DCPS provide her with an equivalent residential placement as a substitute for the residential placement that Grafton provided.

Mrs. Alston does not have the means or wherewithal independently to undertake a search for and visits to alternative residential placements. See Plaintiff's Application to Proceed without Prepayment of Fees. Such schools typically require that they observe or interview prospective students. Therefore Mrs. Alston requests that this Court order DCPS to issue referrals to residential placements, provide any assistance with transportation or otherwise that Mrs. Alston and C.A. may require to visit or interview at any proposed residential placement, and then place C.A. at such a facility, pending resolution of her Due Process Complaint and any appeal thereof. Mrs. Alston asks that this Court order DCPS to send out referrals within five days and provide copies of any such referrals to the Court, to assure timely compliance.

Wherefore, Plaintiffs respectfully request that Stay Put relief issue.

Respectfully submitted,

Karen D. Alvarez
D.C.Bar No. 423186
1442 Foxhall Rd, N.W.
Washington, D.C. 20007
(202) 333-8553

May 5, 2006