IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHANDA ALSTON, et al, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 6-0836(RMU) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

_____

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EMERGENCY STAY PUT RELIEF

On May 5, 2006 Plaintiffs filed their Motion for Emergency Stay Put Relief, seeking an order requiring Defendants to provide a residential placement for Plaintiff C.A., pending completion of Ms. Alston's Due Process Complaint and any appeal thereof, as required by C.A.'s 2005-2006 IEP and the Stay Put provision of the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 USC Section 1415(j). On May 24, 2006 Defendants filed their Opposition to Plaintiffs' motion for Stay Put relief ("Opposition") (Docket Doc. No. 7). That Opposition presents no defense that is consistent with IDEA that might justify Defendants' failure to provide C.A. a Stay Put residential program.

Plaintiffs, therefore, request that this Court order Defendants to comply with the Stay Put provision of IDEA by proposing and funding a residential placement for C.A.,

1

pending completion of her Due Process complaint and any appeal there from.


**I**
**PLAINTIFFS MEET THE REQUIREMENTS FOR STAY PUT RELIEF**

**1. Defendants Acknowledge that 2005-2006 IEP is Stay Put IEP**

The Stay Put provision of IDEA preserves the last-agreed upon educational

program and placement. Plaintiff C.A.'s 2005-2006 school year IEP was reviewed by this

Court and by Defendants in connection with a complaint for stay put relief filed in

September 2005. See Betty Laster et al v. D.C. et al, 5-CV-1875 (RMU) (filed Sept. 22,

2005).  Defendants there acknowledged, and this Court found, that C.A.'s June 20, 2005

IEP for the 2005-2006 school year ("2005-2006 IEP") was C.A.'s last-agreed upon IEP

and her Stay Put IEP. Defendants' Opposition to Plaintiffs' motion for Temporary

Restraining Order at 2 (filed Sept. 23, 2005); Memorandum Opinion at 3, 8 (issued Sept.

30, 2005).

Defendants' Opposition acknowledges that the 2005-2006 IEP continues to be

C.A.'s last-agreed upon IEP. See Docket Doc. No. 7 at 3 (DCPS continues to fund Cabin

John MS placement pursuant to 2005-2006 school year IEP "upheld by this Court" in

Sept. 2005).


**2. Defendants Acknowledge that 2005-2006 IEP Comprises Residential Program
and Placement as Well as Day Instructional Program**

Both in their September 2005 pleading and in their current Opposition,

Defendants acknowledged that C.A.'s 2005-2006 IEP calls for a dual educational

program/placement, consisting of a residential program that was to have been

implemented at the Grafton School's Rockville Campus and a day-program/ placement at a special education program at Cabin John MS. Defendants Opposition to Plaintiffs' Motion for Temporary Restraining Order at 2 (Laster et al v. D.C. et al, 5-CV-1875)(filed Sept. 23, 2005)( hereafter referred to as the "Laster Opposition"); Docket Doc. No. 7 at 1-2 (2005-2006 IEP calls for residential placement at Grafton and day instructional program at Cabin John MS).

### 3. Defendants Concede that C.A. Attended Grafton Until Grafton Closed and That They Have Not Provided Substitute Residential Program

Defendants acknowledge that they are not now providing C.A. with a residential placement in substitute for the residential program that had been provided at Grafton--- pursuant to that IEP--- until Grafton closed in February 2006. Docket Doc. No. 7 at 4.

### 4. Defendants Concede that Elimination of Residential Program Constitutes a Significant Change in Program and Placement

Plaintiffs' Motion for Emergency Stay Put Relief identified the elimination of C.A.'s residential program as a significant change in program or placement for purposes of the Lunceford analysis. Plaintiffs Motion at 5-6. Defendants effectively concede that to be the case. See Docket Doc. 7 at 1-2 (2005-2006 IEP calls for residential program); id.at 4 (DCPS is not providing residential program). See also Opposition at 3-4 (making no reference to Lunceford analysis or requirements); id. at 5 (arguing that Plaintiffs agreed to non-residential Stay Put placement).

### 5. Plaintiffs Did Not Consent to a Change in Program or Placement

Defendants' Opposition asserts, as a defense to their failure to provide C.A. with a residential program upon the closure of Grafton, that Ms. Alston "agreed" to a Stay Put placement consisting solely of the day program/placement at Cabin John MS. Docket Doc. No. 7 at 4. Defendants offer no evidence of any such agreement by Ms. Alston. <u>See</u> Opposition Ex. A (unidentified, undated "notes" of teleconference not executed by Ms. Alston); Opposition Ex. B at Para. 13 (supporting, at best, the proposition that once Grafton closed there would be nowhere, other than her home, for C.A. to reside, until Defendants provided substitute residential program).

Ms. Alston neither consented to elimination of C.A.'s residential program nor waived her rights under the Stay Put provision of IDEA. <u>See</u> 34 C.F.R. Sections 300.8, 300.500 (b)(1)(defining "consent" for purposes of IDEA as agreement in writing after prior written notice and disclosure of rights); <u>Drinker v. Colonial School Dist.</u>, 78 F.3d. 859, 868 (3rd Cir. 1995)( parent can not waive Stay Put right except by affirmative agreement to give it up ). <u>See also</u> Declaration of Chanda Alston at Para. 11-14 (attached as Exhibit B to Plaintiffs' Motion for Emergency Stay Put Relief) (at teleconference on February 14, 2006 attorney for Ms. Alston requested residential placement).

**6. Plaintiffs Have Met Requirements for Stay Put Relief**

(a)  <u>Plaintiffs Have Demonstrated Entitlement to Relief under Lunceford</u>

Once the then current educational program and placement has been identified, and the parent has shown that the placement proposed by DCPS eliminates a basic element of the then current educational program, the parent is entitled to Stay Put relief.  <u>Lunceford</u>

v. D.C. Board of Educ., 745 F.2d 1577, 1582 (D.C. Cir. 1984). Plaintiffs have met their

burden under Lunceford and are entitled to Stay Put relief.


(b) Defendants' Objections to Grafton Are Irrelevant and Misplaced

      Defendants now object to the Grafton placement, some 4 years after it first was

made. See Opposition at 3-4. Defendants' objections to the program at Grafton are

irrelevant, both because Plaintiffs are not seeking a Stay Put placement at Grafton's

Rockville campus, and because the merits of the "then current educational placement"

are not at issue in Stay Put analysis. Defendants' objections to the program at Grafton

also are misplaced. Defendants object to Grafton--- on the purely speculative---

ground that Grafton may not have been providing educational instruction to C.A. Id.

The purpose of the residential component of C.A.'s IEP was not to provide C.A. with

academic instruction, but to provide an emotionally disturbed student with the

structure, psychological and behavioral supports that she requires in order to benefit

from her public education. Hearing Officer's Determination, Findings of Fact No.2- 4

at Pages 2-3, 5-7 (Aug. 22, 2003) (attached as Exhibit D).

**II**
**OTHER ISSUES**

**7. Defendants' Contradictory Representations Before This and Other Tribunals**

      Defendants, in their Opposition and in the Declaration that they submit as Exhibit

B thereto, make factual representations that (1) contradict representations that they have

made previously before this Court and before the Student Hearing Office, (2) have been

determined by prior tribunals to be untrue, or (3) are simply not true. These include, but

are not limited to, the following statements and representations.

a) <u>Statements and Representations Contained in Declaration of Deirdre Council</u>
   (Opposition Exhibit B)

    1) "<u>C.A. is classified as mentally retarded</u>…." Declaration at Para. 4. <u>But see</u>
   Hearing Officer's Determination at 2 (C.A. is eligible for special
   education services as student with <u>multiple disabilities</u> of emotional
   disturbance and moderate mental retardation).

    2) "On February 14, 2006, <u>the Multidisciplinary Team (MDT) m[e]et to
   discuss C.A.'s situation.</u>" Declaration at Para 8; <u>see also</u> Declaration at
   Para. 9, 13, (again referring to a meeting of an "MDT"); <u>but see</u> DCPS
   Special Education Office Policies and Procedures Manual Ch. IV, Page 4
   (defining an "MDT" Team as a team that includes at least one special
   education teacher of the student) (attached as Exhibit C); Declaration of
   Chanda Alston at Para. 11 (no teacher participated in February 14, 2006
   meeting) (attached as Exhibit B to Plaintiffs' Motion for Emergency Stay
   Put Relief); <u>cf</u> 20 U.S.C. Section 1414(d)(1)(B) (IEP Team must include
   not less than 1 of the child's special education teachers).

    3) " On <u>February 23, 2006, DCPS began transporting C.A. to Cabin John</u>
   from her home in Southeast, Washington", Declaration at Para 14. <u>But
   see</u>, Declaration of Chanda Alston at Para. 13-15 (DCPS did not begin bus
   transport until February 28, after Plaintiffs themselves contacted the
   Office of the DCPS Bus Transport Administrator); Letter of
   Transportation Administrator and Associated Records (Bus Transport to
   Cabin John began February 28, 2006) (attached as Exhibit A).

    4) " <u>All information [ as of February 14, 2006] indicated that C.A. was doing
   well at Cabin John </u>, and should continue her schooling there", Declaration
   at Para. 8. <u>But see</u> Exhibit B at 2 (Grafton psychologist discussing
   significance of hallucinations reported on Feb. 7, 2006); <u>id</u> at 3 (Cabin
   John teacher reporting increasing behavioral problems over weeks prior to
   February 14, 2006: Ex. D to Plaintiffs' Motion for Emergency Stay Put
   Relief at 1-2 (Cabin John staff summarizing emotional and behavioral

problems going back to Summer 2005 and escalating in February 2006).

b) <u>Statements and Representations Contained in Defendants' Pleadings</u>

(1) " C.A....has a <u>residential placement ...paid for by DCPS....DCPS pays</u>
<u>[MCPS] for ...[C.A's] attendance at Cabin John.</u>"  <u>Laster</u> Opposition at 2
(filed Sept. 23, 2005). <u>But see</u> Transcript of Nov. 22, 2005 Due Process
Hearing at 17-19, 21,22 , 26, 28, 35 (DCPS does <u>not</u> pay Cabin John tuition,
Cabin John tuition paid by DHS, therefore DCPS <u>not</u> liable to C.A. for failure
to timely pay tuition) (statement of DCPS attorney K. Rohdi); <u>id</u> at 30-32
(C.A.'s placement at Cabin John is responsibility of DHS)(statement of
Deirdre Council) (attached as Exhibit E).

(2) " <u>Grafton is not C.A.'s educational placement pursuant to IDEA....Cabin</u>
<u>John MS is C.A.'s Educational placement.</u>" Docket Doc., No. 7 at 3-4.  <u>But</u>
<u>see</u> Transcript of Nov. 22, 2005 Due Process Hearing at 17-19, 21, 22, 26, 28,
35 (Grafton is <u>only</u> educational placement and IDEA does not require
instruction or placement at Cabin John) (statement of DCPS attorney K.
Rohdi) (attached as Exhibit E); Hearing Officer's Determination at 5-7 (IEP
and IDEA require dual residential program and placement and day
instructional program and placement).

(3) "C.A. is a <u>special education student who has a residential placement in</u>
<u>Rockville, MD</u>...." <u>Laster</u> Opposition at 2. <u>But see</u> Docket Doc. No. 7 at 4
("Grafton is <u>not</u> C.A.'s educational placement pursuant to IDEA...").

These concerns were first addressed in the Hearing Officer's Determination of August
2003. See Ex. D at Para. 6-7 and Page 6. (discussing false statements and falsification of
DCPS documents by DCPS liaison to Grafton).

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186

1442 Foxhall Road, N.W.
Washington, D.C. 20007
(202) 333-8553
202-333-1546 (Fax)