# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
# OFFICE OF MANAGEMENT SERVICES

## SPECIAL EDUCATION DUE PROCESS HEARING

## CONFIDENTIAL

## HEARING OFFICER'S DETERMINATION

STUDENT HEARING
OFFICE
2003 AUG 22 AM 9:14

**STUDENT: Chanette Alston** **DATE OF BIRTH: 9/19/92**

**ADDRESS: 1911 Savannah Street, S.E.
Washington, D.C. 20020**

**PRESENT SCHOOL ATTENDING: Grafton School
HOME SCHOOL: Tubman**

**DATE OF HEARING: August 8, 2003
LEGAL MEMORANDA FILED: August 18, 2003
PRESENT AT THE HEARING:**

| | |
|---|---|
| Karen Alvarez | Counsel for the Parent |
| Martin Cherry | Placement Specialist, DCPS |
| Ade Coker* | Special Education Coordinator, Kramer M.S. |
| Dr. Michelle Hollander | Psychologist |
| Dr. Michael Small | Acting Education Director, Grafton |
| Chanda Alston | Mother |
| Michael Levy | Counsel for DCPS |

(* Testified by telephone)

**Parent's Representative: Karen Alvarez, Esq.
Address: 1442 Foxhall Road, N.W.
Washington, D.C. 20007
FAX: 202-333-1546**

**School System's Representative: Michael Levy, Esq.
Address: 825 N. Capitol Street, N.E., Washington, D.C. 20002**

Ex D.

## INTRODUCTION:

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on August 8, 2003 at the request of Karen Alvarez, counsel for the parent and the student. Michael Levy represented DCPS, the other party to this hearing. This hearing officer requested legal memoranda to be filed by August 18, 2003.

## JURISDICTION:

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq.; and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300; and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

## ISSUES:

1. Did the process by which DCPS made a Prior Notice of Placement to Kramer M.S. violate IDEA?

## DOCUMENTS SUBMITTED ON BEHALF OF DCPS:

DCPS-1-DCPS-8

## DOCUMENTS SUBMITTED ON BEHALF OF STUDENT:

CA-1-CA-13

## FINDINGS OF FACT:

1. Chanette Alston is an eleven-year-old student who has been found eligible for special education services by DCPS as a student with the multiple disabilities (MD) of emotional disturbance (ED) and moderate mental retardation (MMR). (CA-8)

2. Dr. Sheila Sontag conducted a psychiatric evaluation of the student in September 2001. Dr. Sontag made the diagnostic impression that the student has Disruptive Behavioral Disorder, Attention Deficit Hyperactivity Disorder and Moderate Mental Retardation. Dr. Sontag recommended that: " Chanette needs a highly structured and nurturing school environment. Residential placement would meet Chanette's needs.

Poor ego function and vulnerability to cognitive slippage directly impede her ability to learn. Without intensive and appropriate school interventions Chanette is at clear risk for increasingly severe problematic behavior, self injury and aggression toward peers and family... Chanette is a fragile and vulnerable student who requires a more intense level of school services to make appropriate educational progress." (CA-11) A clinical psychological evaluation by Dr. Karen Kent also found that the student's emotional problems required a 24-hour structure provided by a residential placement in order to benefit from her education. (CA-4 at 17)

3. On March 8, 2002, an IEP meeting was held at the Kingsbury Center and the MDT team determined that the appropriate placement for the student was a residential placement. On March 12, 2002, a Residential Placement Unit meeting convened and approved funding for the student at Grafton School in Rockville, Maryland. The student has attended Grafton School since April 4, 2002. (CA-6 at p. 30, CA-10)

4. On February 6, 2003, an MDT meeting/Grafton Outcomes meeting was convened at Grafton to review the student's IEP with Grafton staff, Mrs. Alston and DCPS representative Martin Cherry. This hearing officer finds that Ms. Victoria Westbury's sworn declaration of the chronology of events is a correct recitation of the facts. Ms. Westbury, the Education Director of Grafton, stated in her sworn declaration: "At the Outcomes meeting Grafton staff, together with Chanette's mother, Ms. Chanda Alston, reviewed Chanette's progress and goals. The Outcomes team concluded that Chanette continued to require a residential placement. The Outcomes team also concluded that Chanette required more academic stimulation, in a classroom setting with higher functioning students. Several of Grafton's students have similar needs. For those students Grafton has arranged for them to attend a special education program, the 'School/Community-Based Program' ("SCBP") during school hours and return to Grafton for the remainder of the day. The Outcomes team believed that the SCBP would meet Chanette's need for greater academic stimulation and would permit her to maintain the 24-hour structure that she requires. The Outcomes Team prepared draft goals and objectives and a draft IEP for Chanette. Chanette's case-manager contacted Montgomery County Public Schools to determine what would have to be done in order

[illegible]

Team approved Chanette's proposed IEP and agreed that Chanette would

attend the SCBP and continue in her Grafton residential placement. Mr. Cherry approved DCPS funding at the meeting. Mr. Cherry was informed that an authorization letter would be needed. He complied and indicated that he would fax this form to Grafton's case manager. After subsequent phone calls to DCPS for the authorization letter, Ms. Contessa Lee, informed the Education Director and Case Manager that funding was not properly authorized for Day placement in Montgomery County. Mr. Martin Cherry requested further meetings with Grafton and Ms. Alston to discuss placement options. These were held on April 22, 2003 and May 9, 2003. At the May 9 meeting, Mr. Cherry distributed a form titled "MDT Meeting Notes'. He asked that all those present sign at the top of the form. At the time that Grafton staff and others present signed that form the form was blank." (CA-4- Declaration of Victoria Westbury) The testimony of Dr. Hollander supports the sworn declaration of Ms. Westbury.

6. Ms. Westbury further stated in her sworn declaration: " Mr. Cherry later requested that another meeting be held on June 3, 2003. Mr. Cherry did not attend the June 3 meeting but participated by phone. On June 3, 2003, Mr. Cherry telefaxed to Grafton an IEP coversheet, bearing the date of March 4, signed by him alone, a form titled 'MDT Team Prior Notice', bearing the date of May 9, 2003 and a copy of the form titled ' MDT Meeting Notes' and dated March 4, 2003. The 'MDT Meeting Notes' faxed that day had been completed by Mr. Cherry; none of the persons present at the March 4 meeting had seen those notes or agreed to them; and they did not reflect the views expressed by the IEP team on March 4, 2003. The IEP coversheet faxed on June 3 did not reflect the decision made by the IEP team on that date." (CA-4- Declaration of Victoria Westbury) The testimony of Dr. Hollander supports the sworn declaration of Ms. Westbury. This hearing officer finds that Ms. Westbury's declaration had the dates wrong on the MDT Meeting Notes faxed by Mr. Cherry and should be May 9th and not March 4th. This is consistent with her declaration that Mr. Cherry had the Grafton team members and the parent sign a blank MDT Meeting Notes form on May 9th. The MDT Meeting Notes that DCPS's representative Mr. Cherry wrote were as follows: " Plan- Grafton is no longer an appropriate level of service for Chanette. Team feels that she can be in a mainstream setting. DCPS has proposed, and the team has agreed, that we would place Chanette in a MR program at Kramer MS starting w/ESY 2003. At the same time, DCPS would put Chanette's case before the MAPT committee and ask for wrap-around services and respite care (if needed) so that Chanette could return to the home by the end of this summer. In either case, Chanette would return to the home by Sept. 2003. Kramer M.S. was chosen for placement because it has an appropriate program and to avoid transitions from elementary school to JHS." (DCPS-1) Mr. Cherry's recitation of the May 9th Meeting Notes had not been seen or agreed to by the MDT team at

Grafton including the parent and did not reflect the views of the MDT team. Mr. Cherry's recitation in the MDT Meeting Notes is false.

7. The Prior Notice faxed to Grafton by Mr. Cherry on June 3 and bearing the date of May 9, 2003 stated that the student's placement had been changed from Grafton to DCPS's Kramer M.S. MR program. The Prior Notice was prepared by Mr. Cherry and did not reflect the views of the IEP team that met at Grafton. The DCPS Prior Notice of Placement to Kramer M.S. was not discussed with the Grafton staff or the parent at the IEP meeting of March 4th or the subsequent meetings at Grafton on April 22nd and May 9th. (Testimony of Ms. Alston, Dr. Hollander) DCPS made a unilateral decision to place the student at Kramer M.S. MR program without discussion, participation, or agreement with the parent or the IEP team at Grafton.

## DISCUSSION AND CONCLUSIONS OF LAW:

The issue in this case is whether DCPS complied with IDEA in the way it made a placement decision to change the student's placement from Grafton School in Rockville, Maryland, a residential placement, to DCPS's day program at Kramer M.S. MR program. The record is clear that the only psychiatric and clinical evaluations on the student found that the student's emotional problems required a 24-hour structure provided by a residential placement in order for her to benefit from her education. (See Findings of Fact #2) On February 6, 2003, an MDT/Outcomes meeting at Grafton with the participation of DCPS's representative Mr. Cherry, the parent and the Grafton staff after reviewing the student's progress and goals, agreed that the student continued to require a residential placement. All participants also agreed that the student required more academic stimulation in a classroom setting with higher functioning students. Grafton has arranged for similar students to attend a special education program, the School/Community Based Program (SCBP) in Montgomery County Public Schools (MCPS) during school hours and return to Grafton for the remainder of the day. At the March 4th 2003 MDT/IEP meeting at Grafton with participation of the parent, DCPS representative Mr. Cherry and the Grafton staff, the MDT team concluded that SCBP would meet Chanette's need for greater academic stimulation and would permit her to maintain the 24-hour structure she requires. All participants of the MDT team agreed that Chanette would attend the SCBP and continue in her Grafton residential placement. Mr. Cherry approved DCPS funding at the meeting. (See Findings of Fact #4) After subsequent phone calls to DCPS for the authorization letter, Ms. Contessa Lee of DCPS informed the Education Director and Case Manager at Grafton that funding was not properly authorized for day placement at SCBP in MCPS. Additional meetings were held at Grafton with DCPS's representative Mr. Cherry and the parent on April 22nd and May 9th to discuss other placement options, but the placement option of Kramer M.S. MR program was not raised or discussed. On June 3rd 2003, Mr. Cherry faxed to Grafton staff a Prior Notice of Placement dated May 9th 2003 changing the student's placement from Grafton to Kramer M.S. MR program.

None of the Grafton staff or the parent attending the May 9th meeting had seen or agreed to the Prior Notice changing placement to Kramer M.S. MR program until it was faxed on June 3rd. Mr. Cherry also faxed an IEP coversheet that he wrote up that did not reflect the MDT/IEP meeting agreement on March 4th 2003. Finally, Mr. Cherry faxed a copy of MDT Meeting Notes dated May 9th 2003, that he wrote. Mr. Cherry had obtained the signatures of the Grafton team and the parent at the May 9th meeting on a blank MDT Meeting Notes form. Mr. Cherry wrote the MDT Meeting Notes after the May 9th meeting. Mr. Cherry wrote: " Grafton is no longer an appropriate level of service for Chanette. Team feels that she can be in a mainstream setting. DCPS has proposed, and the team has agreed that we would place Chanette in a MR program at Kramer M.S. starting w/ ESY 2003…Kramer MS was chosen for placement because it has an appropriate program and to avoid transitions from elementary school to JHS." None of the Grafton MDT team including the parent present at the May 9th MDT meeting had seen the MDT Meeting Notes prior to it being faxed on June 3rd and the Grafton team and parent did not agree to the Notes and they did not reflect the views of the MDT team. (See Testimony of Dr. Hollander, Ms. Alston and CA-4-Declaration of Victoria Westbury and Findings of Fact 6) The DCPS representative's action of obtaining the MDT's team's signatures including the parent on a blank MDT Meeting Notes form and than writing a narrative that is contrary to the views of the MDT team including the parent and totally false in order to support DCPS's decision to change the student's placement is gross misconduct. This hearing officer finds these facts similar to the case of *Quackenbush v. Johnson City School District*, 716 F.2d 141, (2d Cir. 1983). In that case, a parent requested that her son be reviewed for eligibility for special education after she submitted a supporting psychological evaluation that her son was learning disabled. A school district employee came to her home with a parental permission form that the parent filled out. On instruction of the school employee, the parent left blank the area to be checked with respect to giving permission to conduct an evaluation of her son. The school employee took the form and put a check mark on the form in the box indicating that the parent denied the school district permission to conduct an evaluation of her son. The form was altered for the sole purpose of denying the child the special education he is entitled to. The Second Circuit Federal Court of Appeals found that the school official's action was misconduct that deprived the child of a Free Appropriate Public Education (FAPE).

IDEA requires that " A group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options" make placement decisions. 34 C.F.R. Section 300.552(a)(1) Like formulation of an IEP, a placement decision is not a unilateral matter for school district determination. In this case, the MDT/IEP team meeting on March 4th 2003 at Grafton including the parent and the DCPS representative had decided, after agreeing to the IEP, on the student's continued placement at Grafton with day time participation in the MCPS SCBP. DCPS than changed their mind and refused to authorize the day placement at MCPS SCBP. At subsequent meetings on April 22nd and May 9th, DCPS raised other placement options but was seeking the Kramer M.S. MR program. DCPS then made a unilateral decision to change the student's placement from Grafton to Kramer M.S. MR program through a Prior Notice. DCPS supported their decision with a false MDT Meeting Notes

narrative and a false unilateral IEP cover sheet. The parent and the Grafton MDT team, " persons knowledgeable about the child", never saw or agreed to the MDT Meetings Notes or IEP cover sheet and in fact had agreed to the child's continued placement at Grafton with participation in the MCPS SCBP. The parent testified she never heard of the Kramer M.S. MR program at the MDT meetings. DCPS's actions are a blatant violation of IDEA at 34 C.F.R. Section 300.552 (a)(1).

It is hereby **ORDERED** that:

**DCPS shall continue to fund the student's placement at Grafton School in Rockville, Maryland including her participation in the Montgomery County Public School SCBP for the 2003-2004 school year. The parent is the prevailing party in this case.**

**This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.**

Seymour DuBow, Esq.
Impartial Hearing Officer

Date Issued: 8/22/03

Date filed: August 22, 2003