wtk

1   at Grafton in Rockville, Maryland, including her

2   participation in the Montgomery County Public

3   School SCBP for the 2003/2004 school year.  The

4   Parent is the prevailing party in this case.

5       MS. RODI:  So where that was wrong is that

6   we weren't funding it in the first place.  And we

7   never, actually, if you read the whole decision, we

8   never actually--there was a thing where Mr. Sherry

9   stated in the meeting that he would refund it and,

10  then, subsequent conversations later said that he

11  misspoke, he would not fund it.  And that they said

12  that they would continue to fund, there was no

13  continue--there was no possible continuation

14  because we were never funding it in the first

15  place.

16      MS. ALVAREZ:  DCPS had an opportunity to

17  appeal this Order and it did not.  Therefore, I am

18  requesting on the basis of this Order and the

19  undisputed facts that DCPS failed to issue the

20  funding authorization for September '03/'04 school

21  year and for the '04/'05 school year, until January

22  of 2005, that the Hearing Officer find that DCPS,

1   violated the Hearing Officer's determination,

2   failed to provide faith; find an Order that DCPS

3   provide compensatory-educational services for the

4   period September '03 through January '05.

5           As for Ms. Rodi's objection to software,

6   et cetera, I would note that in the Parent's

7   due-process complaint, that the Parent specifically

8   requested compensatory-education services for these

9   periods and at the time I think that covers

10  adequately her request for tutorial and

11  phonographic software.

12          MS. RODI:  No, it doesn't--that does not

13  because this are separate items than the one and

14  that's separate from the compensatory education

15  that she's seeking.  And number two the fact that

16  we were not funding it; that I'm sorry that

17  was--but we've not--we have not [unintell.] is

18  being funded and it's being funded through the

19  Department of Human Services.

20          HEARING OFFICER WOODS:  Well, where does

21  it say to fund it?

22          MS. RODI:  The Order said to continue to

1  fund it, but we did not fund it in the first place.

2        HEARING OFFICER WOODS:  Okay, but what

3  about the point, then, that is the Order.  You're

4  saying that the Order is wrong, but that is the

5  Order.

6        MS. RODI:  Correct and currently, she's not

7  being funded by DCPS.

8        HEARING OFFICER WOODS:  I understand,

9  but--

10        MS. RODI:  But another thing is that we

11  were still funding the school for her, so it wasn't

12  that she was being denied--

13        HEARING OFFICER WOODS:  But it sounds like

14  that argument was made and Mr. DuBow disagreed with

15  you.  In other words, you didn't make that

16  argument, apparently that same argument was made

17  and he disagreed.

18        MS. RODI:  It was partially made, I

19  believe, but the fact is that she--

20        HEARING OFFICER WOODS:  I understand.

21        MS. RODI:  --she needs to show where

22  there's actually been harm and, I mean, this kid's

wtk

1   been in this Cabin John for over a year now and

2   she's stating that she's behind.  I don't

3   understand.

4            MS. ALVAREZ:  The child's IEP was found by

5   the Hearing Officer, in August of 2003, to be an

6   IEP that required both he day-placement and the

7   residential-placement.  The Parent has filed the

8   current IEP, which also calls for the combined

9   Cabin John and Grafton placement.

10           I would like to clarify this issue that

11  Ms. Rodi has raised for the Record so that this is

12  also being addressed at District Court and I'm sure

13  Judge Urbana [ph], will be very interested in the

14  comments that you made today, Ms. Rodi.

15           When you state that DHS is funding this,

16  what do you mean?

17           MS. RODI:  It says right on the--

18           MS. COUNSEL:  Can I--can I--I need to say

19  something because--

20           HEARING OFFICER WOODS:  Do you mind if

21  she--

22           MS. RODI:  She's aware of this.

1          MS. COUNSEL:  Can you swear me in or do

2    something, whatever it is--I am the residential

3    coordinator, so I know about the funding and the

4    attorney would not know about the funding and how

5    the funds are channeled through DHS and DCPS and

6    how we share that.

7          MS. ALVAREZ:  Okay.

8          MS. COUNSEL:  So, she wouldn't be aware of

9    that, I would be.

10         MS. ALVAREZ:  All right.

11         MS. COUNSEL:  So, if you need that

12   answered.

13         MS. ALVAREZ:  If the issue--since MS. Rodi

14   has raised the issue of DHS, where does DHS come

15   into this, Ms. Counsel?

16         MS. COUNSEL:  Do I need to be sworn in?

17         HEARING OFFICER WOODS:  Do you want it as

18   testimony or just take the argument, it doesn't

19   matter to me.

20         MS. ALVAREZ:  Just take the argument.

21         HEARING OFFICER WOODS:  I go ahead.

22         MS. COUNSEL:  Since the Student is being

wtk

1    overseen, also, by DHS--

2         MS. ALVAREZ:  What do you mean overseen

3    by--

4         MS. COUNSEL:  She doesn't live with her

5    mother, nor does she live with her father.

6         MS. ALVAREZ:  She is in her mother's

7    custody.

8         MS. COUNSEL:  She is in her mother's

9    custody but, apparently, has to be supervised--

10        MS. ALVAREZ:  No, she--

11        MS. COUNSEL:  Wait a minute--wait a

12   minute, then why is she still living at Grafton?

13        MS. ALVAREZ:  Because she's in a DCPS

14   residential school placement.

15        MS. COUNSEL:  But she's attending

16   Montgomery County Public School.

17        MS. ALVAREZ:  Because she has an IEP that

18   calls for both.

19        MS. COUNSEL:  Let me just say this.  I'm

20   the residential coordinator and I manage both

21   populations of students.

22        MS. ALVAREZ:  Mm-hmm.

wtk

1          MS. COUNSEL:  Students that attend schools

2    in surrounding counties, as well as students that

3    attend residential facilities.

4          MS. ALVAREZ:  Mm-hmm.

5          MS. COUNSEL:  If she is getting funded at

6    a residential facility, that indicates that she is

7    going to school, as well as living at Grafton.

8          MS. ALVAREZ:  She spends the school week

9    at Grafton.

10         MS. COUNSEL:  When I was--right, so she's

11   living at the residential facility, but not

12   attending school, she's going to a school outside

13   of that particular facility.

14         MS. ALVAREZ:  She's attending evening--

15         MS. COUNSEL:  DHS is involved because of

16   the fact that she's not residing with either one of

17   her parents.  Not because of the fact that she

18   cannot, it's because of the fact that there are

19   external issues that she can't live mom, nor dad.

20         MS. ALVAREZ:  What do you mean by external

21   issues?

22         MS. COUNSEL:  I didn't want to say--

1          MS. ALVAREZ:  There are none that I'm

2     aware of and you, certainly, haven't produced

3     anything.

4          MS. COUNSEL:  I've spoken to the--both

5     parents.  She cannot live with her mom nor her dad

6     at this current time.

7          MS. ALVAREZ:  Let's stop there.

8          MS. COUNSEL:  Okay.

9          MS. ALVAREZ:  There's been nothing

10    introduced to that effect and there's no finding to

11    that effect.

12         MS. COUNSEL:  Well, I'm just trying to

13    speak to the fact as to why she's living at a

14    residential facility but going to school at a

15    Montgomery County Public School and I think that's

16    very--

17         MS. COUNSEL:  Well, I think that's not--I

18    would ask that the Hearing Officer terminate this.

19         MS. COUNSEL:  Okay.

20         MS. ALVAREZ:  The IEP has clearly called

21    for both he day-school placement at Cabin John and

22    the residential placement at Grafton

wtk

1          [Simultaneous conversation.] MS. ALVAREZ:

2     Excuse me--excuse me, may I finish.  All these

3     issues were raised by DCPS in the 2003, the August

4     2003 Hearing Officer's determination, which found

5     squarely for the Parent.  DCPS has not initiated

6     its own due-process complaint or hearing here.  And

7     so, there's not right or reason for a discussion of

8     this issue.

9          Whether or not DCPS now agrees with the

10    placement at the combined Grafton and Cabin John

11    program, DCPS has failed to issue the payment

12    authorization.

13         Now, if DCPS's argument is that it's not

14    required to comply with the Hearing Officer's Order

15    of August 2003, clearly, that's without merit.

16    DCPS--

17         MS. RODI:  I did not say that, don't put

18    words in my mouth.

19         MS. ALVAREZ:  --DCPS had an obligation to

20    comply with that order and it failed to comply with

21    that Order.  It did not comply with that Order

22    until January of 2005.  The Parent has requested a

1    finding that DCPS violated that Order.

2           We're requesting a finding that Chanette

3    is in need of compensatory services, recompense her

4    for the period September 2003 through January 2005.

5           MS. RODI:   [unintell.] we've actually

6    never complied with that Order, because the

7    District of Columbia Department of Human Services

8    has paid.  We have never paid for this program.

9    The Department of Human Services has paid for this

10   program.  We can't--we--we, as DCPS, cannot pay for

11   dual schools.  We have to have a reason to

12   pay--there has to be a reason for a Student to be

13   in two placements.

14          And the reason is a personal reason, which

15   is why the Student is in residential in a day

16   program.  And in order to--

17          MS. ALVAREZ:  This is still the same

18   argument they made in August of 2003 and it was

19   rejected by the Hearing Officer then.  I'm

20   delighted--

21          MS. RODI:  I--

22          MS. ALVAREZ:  I'm delighted that DCPS is

1    making this argument on the Record, because DCPS

2    counsel at District Court made exactly the opposite

3    argument that they were in compliance and there had

4    just been a minor delay.

5           MS. RODI:  I didn't say--I did not say

6    that DCPS--I said that DCPS--I did not say the D.C.

7    government was out of compliance.  I said that DCPS

8    was not the one that was implementing that.

9           HEARING OFFICER WOODS:  Okay, but I don't,

10   I'm not seeing the difference here.  What's pending

11   in Court at this point?  What's the--

12          MS. ALVAREZ:  Failure to comply with her

13   stay-put rights.

14          HEARING OFFICER WOODS:  I see.  So, this

15   issue is not before the Court to decide?

16          MS. ALVAREZ:  The compensatory education

17   is not before the Court.

18          HEARING OFFICER WOODS:  So, at this

19   particular point, I mean, the Order is there, was

20   it appealed?

21          MS. RODI:  No, it wasn't.

22          HEARING OFFICER WOODS:  So, how do you

1   comply with that Order despite the arguments that

2   you make?  In other words, that's a that change the

3   Order, what you're arguing, do you see what I'm

4   saying?

5          MS. RODI:  Well, it's being paid for, just

6   not by DCPS.

7          HEARING OFFICER WOODS:  I understand.

8   But, is she saying it wasn't paid for a particular

9   time period, who is responsible for that, if that

10  Order has to be enforced?  That's the way I see it.

11         MS. RODI:  If it came back, it would still

12  be the Department of Human Services, because we

13  were already paying for Grafton.

14         HEARING OFFICER WOODS:  No, for that

15  Order, who would be responsible?

16         MS. RODI:  It could still--it could Order

17  DCPS and then DCPS would just push it off to human

18  services.

19         HEARING OFFICER WOODS:  But I can only

20  deal with the Order.

21         MS. RODI:  Right.

22         HEARING OFFICER WOODS:  Your part is

1    dealing with Human Services.  So, what difference

2    does it make if you're going to get reimbursed?  I

3    don't understand it?

4              MS. RODI:  I don't know--that's the thing,

5    is that I don't know.  All we're saying is that the

6    Student was not without services during that time

7    period.

8              HEARING OFFICER WOODS:  Well, you're

9    saying that--

10              MS. ALVAREZ:  Well--

11              HEARING OFFICER WOODS:  --that this child

12    was because she was not able to attend a tutoring

13    program, because the program was not funded?

14              MS. ALVAREZ:  And the IEP ordering that

15    program was upheld by the Hearing Officer in August

16    of 2003.

17              HEARING OFFICER WOODS:  That's the--

18              MS. RODI:  But I don't understand, then,

19    if that's the issue, why this wasn't brought to a

20    meeting, versus bringing it here?

21              HEARING OFFICER WOODS:  I don't know.

22              MS. RODI:  I don't understand that.  Why

1  wouldn't you bring it right--

2          MS. ALVAREZ:  Why wouldn't we bring what?

3          MS. RODI:  Why would you not go to a

4  meeting for comp-ed that's [unintell.]?

5          MS. ALVAREZ:  Well, at the time we filed

6  our complaint, you hadn't paid for it this coming

7  school year.

8          MS. RODI:  Okay, so, why didn't it go to a

9  meeting?

10          MS. ALVAREZ:  We've already filed that

11  complaint, we're entitled to hear it--a hearing.

12          MS. RODI:  Why didn't you go to a

13  Resolution Meeting?

14          MS. ALVAREZ:  We did go to a Resolution

15  Meeting.

16          MS. RODI:  And then, so, the only thing

17  left was--so the only thing left was comp-ed?

18          MS. ALVAREZ:  That's correct.

19          MS. RODI: But that would be a meeting, not

20  a--

21          MS. ALVAREZ:  No, we're requesting an

22  Order, we have filed a complaint.  We requested

wtk

1   compensatory education and pursuant to that

2   complaint we were requesting an order.  Now, if you

3   would like me to have a xerox, I could.

4           HEARING OFFICER WOODS:  Let me do that in

5   just a second.  So, you don't recall what happened

6   at the Resolution Meeting?

7           MS. RODI:  I mean, I know what happened at

8   the Resolution Meeting, that it was--that it was

9   the issue of getting the--

10          HEARING OFFICER WOODS:  No, regarding

11  comp-ed?

12          MS. RODI:  No, no, there was nothing done

13  with comp-ed--

14          HEARING OFFICER WOODS:  Oh, okay.

15          MS. RODI:  --because they were still

16  resolving--

17          HEARING OFFICER WOODS:  Where are we with

18  that in light of the Order?  That's what I don't

19  understand, what's the case--

20          MS. RODI:  The only thing left is

21  comp-ed--the only issues is comp-ed and we're

22  saying that--we agree that she--we will stipulate

wtk

1   that because this wasn't issued until 9/22/05, we

2   owe this child comp-ed from the beginning of the

3   school year until 9/22/05.

4           MS. ALVAREZ:  We're not asking for you to

5   order comp-ed for this school year.  We are asking

6   for compensatory education from September of '03

7   through January of 2005, and that is all we're

8   asking for.

9           HEARING OFFICER WOODS:  Would that payment

10  that you made in January, actually have been for

11  the last year, not this year?

12          MS. RODI:  That's right, it was for last--

13          HEARING OFFICER WOODS:  It's for last

14  year, not this year?

15          MS. RODI:  Correct, correct.

16          HEARING OFFICER WOODS:  And that's what

17  the period you're seeking comp-ed for is the period

18  that they hadn't paid.

19          MS. RODI:  The period that Human Services

20  had not paid.

21          HEARING OFFICER WOODS:  Well, according to

22  the Order, I can only deal with the Order.  Human

wtk                                                                          42

1   Services, we have no jurisdiction over them.

2           MS. RODI:  Right, and, therefore, that--

3           HEARING OFFICER WOODS:  --it sounded like

4   what your witness was saying is there's some sort

5   of financial pot that you share, but I don't know

6   if that means responsibility.  And I think what

7   you're mixing is, responsibility and finances and

8   I'm keeping them separate.

9           MS. RODI:  Well, the problem is

10  that--this--Montgomery County placement has always

11  been funded by Human Services.

12          HEARING OFFICER WOODS:  I understand that,

13  but that--

14          MS. RODI:  So, we're saying that failure

15  should be brought up with Human Services, not with

16  DCPS.

17          HEARING OFFICER WOODS:  We don't have

18  authority to--

19          MS. RODI:  Right, so then it shouldn't be

20  here.

21          HEARING OFFICER WOODS:  You haven't

22  asked--there's nothing in this record to say the

1   case should be dismissed.   You didn't

2   say--challenge the [unintell.] of the pleading.

3          MS. RODI:   Then, make an order, I mean, I

4   can make a Motion to Dismiss that's the only thing.

5          HEARING OFFICER WOODS:   The motion would

6   be denied--

7          MS. RODI:   Okay, then, I--

8          HEARING OFFICER WOODS:   The point is--

9          MS. RODI:   I mean we can, we'll have a

10  meeting to discuss comp-ed, we're offering that, as

11  well--but other than that, it's up to you.

12         HEARING OFFICER WOODS:   Well, if you're

13  offering it, then why are we not--

14         MS. RODI:   Because I don't have all the

15  specifics.   I'm not offering any numbers or

16  anything, that's up for the--if the team made all

17  these decisions, the team can make a comp-ed plan.

18         HEARING OFFICER WOODS:   But at this point,

19  you're at a hearing and all she's asking is--

20         MS. RODI:   She didn't ask for anything

21  specific, it's not like she came in and asked for,

22  I want X-amount of hours.   All she wants, she says

wtk

44

1  is--

2          HEARING OFFICER WOODS:  No, she just did,

3  she said one hour a week, daily and

4  reading--tutoring and reading and to buy the

5  software--

6          MS. RODI:  The software request, that's a

7  totally separate request that she made.

8          HEARING OFFICER WOODS:  But you, I'm not

9  sure if I follow  your point in terms of what the

10  request is.

11          MS. RODI:  No, no, she said that there's

12  two things.  She said that--first she had a request

13  for software and tutoring.  And then she had a

14  request for comp-ed.

15          MS. ALVAREZ:  No.

16          HEARING OFFICER WOODS:  No, that is the

17  comp-ed.

18          MS. ALVAREZ:  That is the request for

19  comp-ed.

20          MS. RODI: That's what you want for

21  comp-ed?

22          MS. ALVAREZ:  Yes.

wtk                                                                    45

1          HEARING OFFICER WOODS:  That is comp-ed.

2          MS. RODI:  Well, the way you presented it

3    in your hearing--in your opening statement was that

4    that's what the team called for as a separate

5    issue.  You did not say that's that was what you

6    were looking for as comp-ed.

7          MS. ALVAREZ:  Oh, yes, I did.

8          MS. RODI:  You were not clear, had you

9    been clear, that would have been a better

10   understanding.

11         MS. ALVAREZ:  We've clarified it now.

12         MS. RODI:  Now, we go.  So, you're looking

13   for an hour daily--

14         MS. ALVAREZ:  Mm-hmm.

15         MS. RODI:  --and I don't really have a

16   time limit on it.

17         HEARING OFFICER WOODS:  She did, she

18   said--let me step out of the room on that.  Because

19   either you resolve it or--

20         MS. RODI:  I'm willing to agree to that,

21   except not--

22         HEARING OFFICER WOODS:  Well, I need to

1  step out, I can't be a part of that discussion

2  about, do you see what I'm saying, I can't hear

3  that, because if it comes to me to decide, then i

4  have to decide what the time period's going to be.

5  So, if you want a minute to talk about it, that's

6  fine.  Okay, let me step out.  And let you two talk

7  and then whatever disagreement you have, then leave

8  it for resolution.  Okay.  But I can't--

9           [Break.]

10          HEARING OFFICER WOODS:  We're back on the

11 Record.

12          MS. ALVAREZ:  In the Hearing Officer's

13 absence, counsel for DCPS and I agreed that DCPS

14 would provide 305 hours of tutoring over the next

15 18 months.  That represents an hour for each school

16 day.

17          At the end of one year, DCPS can perform

18 Woodcock-Johnson [ph] achievement testing.  If the

19 achievement testing shows that Chanette is then

20 functioning at the fourth-grade level or above in

21 reading and writing, DCPS can terminate the

22 tutoring services.

1          We have also agreed that DCPS--

2          HEARING OFFICER WOODS:  Hold on just a

3    second, if she performs at what level?

4          MS. ALVAREZ:  Fourth-grade level or above

5    in reading and writing.

6          HEARING OFFICER WOODS:  Then, what will

7    happen?

8          MS. ALVAREZ:  Then DCPS can terminate

9    funding of the tutorial services.

10         HEARING OFFICER WOODS:  Okay.

11         MS. ALVAREZ:  So, if, after 12 months,

12   DCPS performs Woodcock-Johnson achievement testing

13   and the achievement testing shows that Chanette's

14   reading and writing is at the fourth-grade level or

15   above, DCPS will not have to fund the final six

16   months of tutoring.

17         In addition, DCPS agrees to provide the

18   software recommended by Chanette's IEP team; DCPS

19   agrees to attend an IEP meeting, let's make that

20   within 30 days, is that agreeable--

21         MS. RODI:  That's right.

22         MS. ALVAREZ:  --for the purpose of

wtk                                                                          48

1    determining the software that Chanette will use

2    during this 12/18-month period.

3              MS. RODI:  And then, just generally, the--

4              MS. ALVAREZ:  I think that resolves the

5    issues.

6              HEARING OFFICER WOODS:  Where would that

7    meeting be?

8              MS. RODI:  At Grafton.

9              HEARING OFFICER WOODS:  G-r-a--

10             MS. ALVAREZ:  G-r-a-f-t-o-n.

11             HEARING OFFICER WOODS:  Is that an

12   elementary school or what kind of a school is it?

13             MS. ALVAREZ:  Residential, in Rockville,

14   Maryland.

15             HEARING OFFICER WOODS:  So, 305 hours of

16   tutoring over an 18-month period.  At the end of

17   the first year, DCPS can perform the

18   Woodcock-Johnson, if she performs at a fourth-grade

19   level or above, in reading and writing, DCPS then

20   terminate its funding for the last six months of

21   the service; that DCPS will provide the software

22   recommended by her IEP team; and the team will

wtk

1    convene within 30 calendar days to discuss and

2    determine what that software will be?

3          MS. RODI:   That's correct.

4          MS. ALVAREZ:   Yes.

5          HEARING OFFICER WOODS:   Okay, thank you

6    all.   The case is submitted, and I'll have the

7    order for you in ten days.

8          [Whereupon, the hearing was concluded.]

9                     - - -

# CERTIFICATE

I, hereby, certify that the tape recording represented by the foregoing pages was transcribed by me; and that the foregoing transcript is a correct and accurate record of the proceedings to the best of my knowledge, ability and belief.

*William T. Kennedy*

**WILLIAM T. KENNEDY**

**TRANSCRIBER**