UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHANDA ALSTON *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 06-0836 |
| | : | | |
| v. | : | Document No.: | 4 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFFS' MOTION FOR A STAY PUT INJUNCTION

### I. INTRODUCTION

This case comes before the court on the plaintiffs' motion for a stay put injunction.[1] The plaintiffs in this case are a handicapped child and her mother. The plaintiffs allege that the defendants, the District of Columbia and the District of Columbia Public Schools ("DCPS"), violated the stay put provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* The plaintiffs move the court for injunctive relief to end the defendants' alleged violation of the plaintiffs' stay put rights. Because the defendants stopped funding the plaintiff's residential placement in violation of the IDEA's stay put provision, as set forth in 20 U.S.C. § 1415(j), the court grants the plaintiffs' motion for a stay put injunction.

---

[1] Under the Individuals with Disabilities Education Act ("IDEA"), a parent who objects to her child's educational placement may file an administrative due process complaint requesting review of the placement decision. 20 U.S.C. § 1415(b) – (d). A stay put injunction allows a student to remain at his current school pending administrative review of a child's educational placement. 20 U.S.C. § 1415 (j); *Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1020 (D.C. Cir. 1989). The purpose of the stay put injunction is to prevent educational authorities from unilaterally moving a child from his or her current placement. *Honing v. Doe,* 484 U.S. 305, 306, 308 (1988).

## II. BACKGROUND

### A. Factual Background

C.A. is thirteen years old and brings this suit through her mother, Chanda Alston. Compl. 2. C.A. is "multiply handicapped" and eligible for special education services. *Id.* 6. C.A.'s Individualized Education Program ("IEP")[2] for 2005-2006 requires a daytime instructional placement at a special education program in Cabin John Middle School and a residential placement at Grafton School. *Laster v. Dist. of Columbia*, 394 F. Supp. 2d 60, 67 (D.D.C. 2005).

In January 2006, Grafton School announced that it would close its Rockville, Maryland campus. Pls.' Mot. at 4. On February 14, 2006, representatives from Grafton School, a representative from DCPS, C.A.'s mother, and the plaintiffs' counsel participated in a teleconference meeting to discuss C.A.'s residential living options once Grafton closed. Defs.' Opp'n at 2. The defendants allege that Alston and the other members of the IEP team agreed that C.A. should return home to live with her mother once Grafton closed. *Id.* Pursuant to the alleged agreement, DCPS would continue paying the fees for Cabin John Middle School. *Id.* Alston, however, claims that she "neither consented to [the] elimination of C.A.'s residential program nor waived her rights under the Stay Put provision of IDEA." Pls.' Reply at 4. Alston alleges that she "requested [through her attorney] that DCPS provide a referral for a substitute placement for Grafton" at the teleconference meeting. Pls.' Mot. at 6; Pls.' Mot. Ex. B ¶ 12.

On February 18, 2006, Grafton School closed its Rockville campus. *Id.* at 4. Since that time, DCPS has not proposed or selected an alternative residential placement for C.A. *Id.* at 4-5.

---

[2] An IEP "sets forth the child's educational level, performance, goals," and it "is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty High Sch. Dist No. 218 v. Il. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996).

Alston claims that she contacted DCPS staff requesting substitute residential placement for C.A. on January 30, 2006, February 1, 2006, February 2, 2006, March 9, 2006, and April 5, 2006. Pls.' Mot. at 6. To date, however, DCPS has not provided a substitute residential placement for C.A.

### B. Procedural Background

On May 5, 2006, the plaintiffs filed a due process complaint before the DCPS Student Hearing Office asserting C.A.'s right to attend Cabin John and a substitute for Grafton's residential placement program. Pls.' Mot. at 6. On the same day, the plaintiffs filed a motion for emergency stay put relief, seeking an order requiring the defendants to recommend and fund a substitute residential program for C.A.. Pls.' Mot. at 1. The defendants filed an opposition motion opposing the motion for stay put relief on May 24, 2006. Defs.' Opp'n at 1.

This is the second time within the past year that the plaintiffs have filed a motion seeking stay put relief. On the first occasion, the plaintiffs filed a motion for emergency stay put relief because DCPS was not funding C.A.'s enrollment at Cabin John as required by her 2005-2006 IEP. *Laster*, 394 F. Supp. 2d at 63. On September 28, 2005, this court granted the plaintiffs' motion, requiring DCPS to fund C.A.'s enrollment in both Cabin John Middle School and Grafton Residential Program. *Id*. at 67; Order (Sept. 26, 2006) at 1.

### III. ANALYSIS

DCPS funded C.A.'s placement in the Grafton residential living program as well as her daytime schooling at Cabin John through February 2006. Defs.' Opp'n at 2. When Grafton closed on February 18, 2006, DCPS did not transfer C.A. to another residential living program.

Pls.' Mot. at 5. Instead, C.A. returned home to live with her mother while DCPS continued paying C.A.'s fees at Cabin John Middle School. Defs.' Opp'n at 4. The plaintiffs argue that DCPS' "failure to provide the residential placement called for by her IEP constitutes a unilateral and fundamental change of placement, in violation of IDEA." Pls.' Mot. at 5. The defendants counter that the plaintiffs did not satisfy the traditional four-part test for injunctive relief. Defs.' Opp'n at 3-6. They further argue that Grafton is not an "educational placement" pursuant to the IDEA. *Id*. at 3. Finally, the defendants claim that even if Grafton is considered an educational placement, no stay put violation occurred because Alston allegedly consented to C.A.'s return home. *Id.* at 4-5.

### A. Legal Standard for an IDEA Stay Put Injunction

The purpose of the IDEA is to provide disabled children with "a free appropriate public education" ("FAPE"), and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d). To that end, the parents or legal guardians, teachers, school district and other professionals (collectively, the "IEP team") meet annually to design a comprehensive individualized education program ("IEP") tailored to each disabled child's needs. 20 U.S.C. § 1414(d). The IEP "sets forth the child's educational level, performance, and goals," and it "is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996); *see also Spilsbury v. Dist. of Columbia*, 307 F. Supp. 2d 22, 25 (D.D.C. 2004) (stating that the IDEA requires that an IEP "include a statement of needs, services, learning aids, and programs that should be made available to the student"). Once the

4

IEP team develops the IEP, the school system must provide an appropriate educational placement that comports with the IEP. *Spilsbury*, 307 F. Supp. 2d at 25.

Because the "IDEA guarantees parents of disabled children an opportunity to participate in the identification, evaluation, or educational placement of their children, *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000), parents who disagree with the educational placement or the conclusions set forth in the IEP may request an administrative "impartial due process hearing." 20 U.S.C. § 1415(f). Parents who object to the hearing officer's decision may bring suit in state or federal court. 20 U.S.C. § 1415(i)(2). During the pendency of these judicial or administrative proceedings, if "the State or local educational agency and the parents otherwise agree, the child *shall* remain in his then-current education placement." 20 U.S.C. § 1415(j) (emphasis added). This procedural safeguard is commonly known as the "stay put provision" and its purpose is to prohibit "state or local school authorities from unilaterally excluding disabled children from the classroom . . . during the pendency of review proceedings." *Honig v. Doe*, 484 U.S. 305, 306, 308 (1988).

A parent can invoke the stay put provision when the school system proposes a "a fundamental change in, or elimination of, a basic element of the [then-current education placement]." *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). A parent moving for a stay put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Id.*

Although the IDEA does not define the term "then-current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the

abstract goals of a child's IEP." *Bd. of Educ. of Cmty High Sch. Dist. No. 218*, 103 F.3d at 548; *see also Spilsbury*, 307 F. Supp. 2d at 26-27 (explaining that "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs" and that the term "cannot be read to only indicate which physical school building a child attends"). Accordingly, if a child's then-current educational placement is not available, the school system must provide the student with placement in a similar program during the pendency of administrative and judicial proceedings. *Knight v. Dist. of Columbia*, 877 F.2d 1025, 1029 (D.C. Cir. 1989); *McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985); *Block v. Dist. of Columbia*, 748 F. Supp. 891, 898 n.9 (D.D.C. 1990).

"The stay put provision has been interpreted as imposing an automatic statutory injunction." *Casey K. ex rel. Norman K. v. St. Anne Cmty High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay put injunction to an automatic stay in a bankruptcy case) (citing *Honig*, 484 U.S. at 326-37). In an action alleging a violation of the IDEA's stay put provision, parents are not required to exhaust the administrative process before bringing suit in court. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d. Cir. 2000). The reasoning behind this rule is that "[t]he administrative process is 'inadequate' to remedy violations of § 1415(j)." *Id.* (citing *Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d. Cir. 1991)). "[G]iven the time sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed right.'" *Id.*

### B. The Defendants Violated the Plaintiffs' Stay Put Rights
#### 1. The IDEA's Stay Put Provision in an Automatic Statutory Injunction

The defendants' principal argument is that the plaintiffs do not satisfy "each prong of the

6

. . . four-part test" required to obtain injunctive relief.[3] Defs.' Opp'n at 2. The traditional four-part standard for injunctive relief, however, does not apply in the present case because "the stay put provision has been interpreted as imposing an automatic statutory injunction." *Casey K.*, 400 F.3d at 511 (comparing a stay put injunction to an automatic stay in a bankruptcy case) (citing *Honig*, 484 U.S. at 326-37); *Andersen,* 877 F.2d at 1023 (reiterating that if the stay put provision applies, "injunctive relief is available without the traditional showing of irreparable harm"). Indeed, the IDEA explicitly states that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child *shall* remain in the then-current educational placement of such child . . . "[4] 20 U.S.C. § 1415(j) (emphasis added).

A court may grant a stay put injunction if the school system proposes "a fundamental change in, or elimination of, a basic element of the [then-current education placement]." *Laster*,

---

[3] The defendants state that "[i]n order to obtain injunctive relief, Plaintiffs must satisfy *each* prong of the following four part-part test: 1) that there is a substantial likelihood of success on the merits; 2) that there is an imminent threat of irreparable harm should the relief be denied; 3) that more harm will result to plaintiffs from the denial of the injunction than will result to the defendants from its grant; and 4) that the public interest will not be disserved by the issuance of the requested order." Defs.' Opp'n at 2-3 (emphasis in original). Not only do the defendants misstate the applicable law with respect to stay put injunctions, they also misstate the legal standard for a preliminary injunction. That is, a party seeking a preliminary injunction need not fully satisfy each prong of the four-part test. In fact, courts balance the four factors on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747.

[4] The defendants also argue that the plaintiffs are not entitled to injunctive relief because they failed to exhaust their administrative remedies. Defs.' Opp'n at 5. But, "[i]n an action alleging a violation of the IDEA's stay put provision, parents are not required to exhaust the administrative process before bringing suit in court." *Laster v. Dist.of Columbia*, 394 F. Supp. 2d 60, 65 (D.D.C. 2005) (citing *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d. Cir. 2000).

394 F. Supp. 2d at 64 (citing *Lunceford*, 745 F.2d at 1582). C.A.'s 2005-2006 IEP calls for a "residential placement at the Grafton School in Rockville, Maryland, combined with a day-instructional program for special education students at the Cabin John Middle School." *Laster*, 394 F. Supp. 2d at 66. The 2005-2006 IEP requiring a residential placement at Grafton and daily schooling at Cabin John constitutes C.A.'s current placement for purposes of the IDEA's stay put provision. *Spilsbury*, 307 F. Supp. 2d at 26 (holding that "'current educational placement' is the student's placement before the proposed change"). Both DCPS and C.A.'s mother jointly approved C.A.'s IEP. *Laster*, 394 F. Supp. 2d at 66.

      Grafton closed its Rockville campus on February 18, 2006. Pls.' Mot. at 5. After the school closed, DCPS did not transfer C.A. to another residential placement program similar to the Grafton program. *Id*. Instead, C.A. returned home and DCPS continued to pay the fees for Cabin John Middle School. Defs.' Opp'n at 4. DCPS' failure to enroll C.A. in a substitute residential program, similar to Grafton, violates the IDEA. *Patties v. Dist. of Columbia*, 881 F. Supp. 53, 66 (D.D.C. 1995) (holding that "fail[ure] to make payments in whole or in part or cutting of funds for special education programs amounts to a unilateral change in students' placements, which is prohibited by the IDEA"); *Knight*, 877 F.2d at 1029 (indicating that if a child's then-current educational placement is no longer available and a new placement has not been determined, the school system must provide the student with placement in a similar program during the pendency of administrative and judicial proceedings). Because the defendants have not enrolled C.A. in a substitute program, the plaintiffs are entitled to stay put protection.

### 2. Grafton is a Part of C.A.'s Educational Placement

The defendants also argue that no stay put violation occurred because Grafton is not an "education[al] placement" pursuant to the IDEA.[5] Defs.' Opp'n at 3-4. The defendants, however, do not provide case law supporting the assertion that a residential placement cannot constitute an educational placement under the IDEA. In fact, the IDEA's promulgating regulations call for "a continuum of alternative placements . . . to meet the needs of children with disabilities for special education and related services." 34 C.F.R. § 300.551. Further, the regulations define special education as "specially designed instruction . . . conducted in the classroom, in the home, in hospitals and institutions, and in other settings." 34 C.F.R. § 300.26 (2006). Thus, "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs," not just the "physical school building a child attends." *Spilsbury*, 307 F. Supp. 2d at 26-27 (emphasis in original) (citing *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.,* 103 F.3d 545, 549 (7th Cir. 1996).

### 3. The Plaintiffs did Not Consent to a Change in the IEP

In the alternative, the defendants argue that C.A.'s mother agreed that C.A. should live at home while attending school at Cabin John. Defs.' Opp'n at 5. A parent, however, cannot lose her stay put rights under the IDEA unless she "understands and agrees in writing to the carrying out of the activity for which his or her consent is sought." 34 C.F.R. §300.8; 34 C.F.R.

---

[5] The court notes that the defendants' assertion that Grafton is not a part of C.A.'s educational placement contradicts their statements and arguments at due process hearings that took place in 2003 and 2005. In those due process hearings, the defendants argued that they were only required to pay for C.A.'s residential placement at Grafton, and that they were not required to pay for any additional daytime instruction. Pls.' Reply Ex. D at 6 (stating that although DCPS agreed to fund C.A.'s placement at a day instructional program and at Grafton, DCPS later refused to fund her placement at the day instructional program); Pls.' Reply Ex. E at 22 (stating that DCPS agreed to pay for Grafton).

§300.500. Although the defendants introduce a declaration from a DCPS representative that Alston agreed C.A. "would live at home," Defs.' Opp'n Ex. B ¶ 13, the defendants do not provide written confirmation that Alston and DCPS reached such an agreement. Additionally, Alston repeatedly contacted DCPS requesting substitute residential placement for C.A. Pls.' Mot. at 6; Pls.' Mot. Ex. C at 3,7; Pls.' Mot. Ex. B. ¶¶ 9-12. Alston also filed a due process complaint with the DCPS Student Hearing Office requesting that the DCPS find an alternative residential placement for C.A. Pls.' Mot. at 6; Pls.' Mot. Ex. F at 4. Because there is no written evidence that Alston agreed to the elimination of C.A.'s residential placement, the court cannot agree with the defendants that Alston consented to the "elimination of a basic element" of C.A.'s "then-current education placement." *Lunceford*, 745 F.2d at 1582; *see also* 34 C.F.R. § 300.500 (b)(1) (stating that a parent's consent must be in writing).

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for a stay put injunction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of July, 2006.

                                                          RICARDO M. URBINA
                                                          United States District Judge